Marion E. THACKER and Juanita Thacker,
Respondents,

v.

Earl COURTNEY and Marjorie Courtney,
Appellants,

and

Ethel F. Steinhauser and Joseph W.
Steinhauser, Defendants.

No. 45543.

Supreme Court of Missouri,
Division No. 2.

July 8, 1957.

Donald F. Price, Kansas City, for appellants.

Stone & Stone, S. Ralph Stone, Independence, for respondents.

BOHLING, Commissioner.

A brief outline of this case, involving an oral contract to sell and convey real estate, is: Defendant Mrs. Ethel F. Steinhauser and plaintiff Mrs. Juanita Thacker are sisters, being two of eleven children. Joseph W. Steinhauser is the husband of Ethel. Marion E. Thacker is the husband of Juanita. Mrs. Steinhauser purchased the ½ acre of land in Jackson County here involved for $500 on July 12, 1948. A schoolhouse on the land had burned and the debris was in the basement. Under circumstances detailed hereinafter and following some improvement of the property, the Thackers moved into the four-room basement house October 3, 1948, and were occupying it at the time of trial, December 29, 1955. They paid Mrs. Steinhauser a total of $215, the last payment being made May 29, 1950. Defendants Earl Courtney and Marjorie Courtney, husband and wife, purchased the property from Mrs. Steinhauser on March 21, 1955. The Courtneys instituted an unlawful detainer action against the Thackers in the Magistrate Court. On April 15, 1955, the Thackers filed the instant suit against the Steinhausers and the Courtneys, seeking specific performance of an alleged oral contract on the part of the Steinhausers to sell and convey the land to them, alleging the Courtneys purchased charged with notice of their rights, for an accounting against the Steinhausers, for the cancellation of the deed to defendants Courtney and the vesting of title in plaintiffs, and to enjoin the Courtneys from prosecuting the unlawful detainer action, all subject only to the payment of the amount found due by the court from the plaintiffs to the Steinhausers. A second count, in the alternative, sought actual and punitive damages from defendants Steinhauser.

The defendants put in issue the material allegations of plaintiffs' petition and set up the statute of frauds and laches as a defense. Defendant Ethel F. Sheinhauser filed a counterclaim against the plaintiffs for rent. Defendants Courtney filed a counterclaim against plaintiffs for damages for unlawfully withholding possession; and, in the alternative should plaintiffs prevail, a cross-petition against their co-defendants for the repayment of the $150 paid on the purchase price and the cancellation of their $3,500 note and deed of trust for the balance due.

The court, upon findings in conformity thereto, set aside the deed from Mrs. Steinhauser to the Courtneys; enjoined the Courtneys from prosecuting their unlawful detainer action; vested the title to the land in fee in the Thackers, subject to the Thackers' paying Mrs. Steinhauser $1,825, which the court decreed a lien upon the land, and stayed execution thereon for thirty days. The court further held for the Courtneys on their cross-petition against Mrs. Steinhauser, and dismissed the separate counterclaims of Mrs. Steinhauser and of the Courtneys against the Thackers, as well as the second count of plaintiffs' petition.

The Courtneys have appealed.

Plaintiffs alleged: "Plaintiffs state that on or about the month of June or July, 1948, the defendant Ethel Steinhauser and her husband Joseph W. Steinhauser, knowing that these plaintiffs and their family of children were in need of a home, advised these plaintiffs that she would purchase the hereinafter described property which consisted of approximately ½ acre of land and the burned out remnants of a school house for these plaintiffs and that they could go into the possession of same, improve the premises for living purposes and that all she would expect from these plaintiffs was to be repaid what she and her husband actually invested in the land at the time of the purchase and in material for these plaintiffs toward the building of a home thereon, and that upon payment by the plaintiffs of the amounts so expended, they would convey legal title to these plaintiffs."

Mrs. Thacker, when asked what Mrs. Steinhauser said about the time she bought the lot, answered: "A. She was the one that made the offer. She would buy the

material and we were to do the work, and when we paid the money back what she had in it, it was to be our home."

The Thackers had four children, ranging in age between 2½ and 8½ years, and in 1948, with the exception of a child at Mrs. Steinhauser's, were living in a one-room apartment. Mrs. Thacker stated that she did not see this lot until after Mrs. Steinhauser bought it, and could not remember talking to her sister about the lot until after its purchase; that the main thing was to get a home for the children; that Mrs. Steinhauser borrowed the money on this lot and bought it; and that she did not know that Mrs. Steinhauser mentioned a conveyance or transfer of the property to them.

Mr. Thacker testified that as to why Mrs. Steinhauser was buying this lot "was between her and my wife. I didn't have any conversations with her until I had already started working on the place before we moved in." It appears that he did not have transportation, and on one of the trips for him to work on the lot Mrs. Steinhauser "told me what I was to do, that she would furnish the material and I was to fix it up and I would have the home." "The Court: What did she tell you you must do? A. She would furnish the material and I do the work and make it to where we would have a home, and I was to pay her back what she had in it, and the home would be ours." He stated: "I wanted to pay this amount of money over a period of time, no set amount, no set times, and it was for different amounts of money."

Mrs. Velma J. Abernathy, Mr. Thacker's sister, and Mrs. Ruby McDaniel, a sister of Mrs. Steinhauser and Mrs. Thacker, gave testimony of statements by Mrs. Steinhauser corroborating Mr. and Mrs. Thacker. Mrs. Abernathy stated Mrs. Steinhauser never mentioned transferring the title to the Thackers. Mrs. McDaniel was the only witness testifying Mrs. Steinhauser stated "she would turn the deed over to them."

We do not develop some apparent conflicts in Mrs. McDaniel's testimony. She stated that Mrs. Steinhauser last spoke to her in 1951, but she did not speak to Mrs. Steinhauser and had not spoken to her since 1951.

Mrs. Steinhauser testified that she was working in 1948, and wanted to make an investment to have some spending money of her own. She purchased the lot as an investment after her husband and a friend of his, who knew about values, looked at the lot. She could not afford to build. The Thackers had had a "pretty rough time." Mr. Thacker was injured in 1942 and Mrs. Thacker had to go to work. Mrs. Steinhauser took the baby into her home at their request and the child was still with her in 1948. She and other relatives of Mrs. Thacker had helped the Thackers with groceries and clothing. She had taken Mrs. Thacker up and down the streets to find places where they could take the children. By 1948 the Thackers had lived at nineteen different addresses in the eleven or twelve years of their married life, were living in a one-room apartment, and he was driving a taxi-cab. Mrs. Steinhauser never discussed this lot with Mr. or Mrs. Thacker before she purchased it. Later, she thought it might be possible to make the place livable and the Thackers might live there and have a place for their children. She then mentioned this to Mrs. Thacker, and took Mr. Thacker to look at the lot. He thought it would take a lot of work but not too much money to make it livable. She told him she would have to pay for the material as she earned money. She did not enter into any agreement to sell the property to the Thackers; never thought about selling it to Mrs. Thacker or to Mr. Thacker. No mention of the payment of money to her was ever made at first. She didn't ask for any specified rent. She had helped them off and on through the years, and was not at that time demanding rent or money from the Thackers. She could not afford to give

the Thackers a home. She told them she was expecting some spending money without asking her husband. She paid the taxes and the insurance on the property.

The debris had to be removed and the basement placed in condition for occupancy. The testimony was that in addition to Mr. and Mrs. Thacker and his brother Lonnie, Mr. and Mrs. Steinhauser, Mr. and Mrs. Ralph Townsend, Mr. and Mrs. Jack Newell, Robert McCorkendale, J. R. Langdon, Art Bird, and a Mr. Bear did the work. Mrs. Steinhauser arranged for this help with the possible exception of Lonnie Thacker.

Lonnie Thacker, plaintiffs' witness, testified that while he was working there Mrs. Steinhauser told him she was glad the children would have a place to call their own. She did not tell him she had an agreement with his brother and wife to deed the property to them.

Mr. Steinhauser, Mr. Townsend, Robert McCorkendale and Jack Newell were witnesses for the defendants. They were relatives of Mrs. Thacker and Mrs. Steinhauser.

Mr. Steinhauser, who was yard manager for the Badger Lumber Company, secured 7000 feet of lumber, three large truckloads, from his company and, with help, hauled it to the place. Mr. Thacker did not ask him to secure this lumber or make any arrangements for it. He also delivered a load of concrete blocks and some creosoted ties. He secured a carpenter and they got the construction ready for the sub-roof. His wife hired Mr. Bear to build the flue and hang the doors and windows. He helped remove debris, laid out the floor plan, put joists down, and did other work. Mr. Thacker did not ask him to help.

Mr. Townsend laid the concrete blocks for the foundation and partitions, and thereby paid $200 he owed Mrs. Steinhauser. Mr. Thacker did not ask him to work there, or supervise or oversee the work, or tell him he was to receive the property from Mrs. Steinhauser.

Mr. McCorkendale helped with the roof and did other work in 1948 and 1949. He knew Mrs. Steinhauser purchased the property for an investment. She got him to help, Mr. Thacker did not. Mr. Thacker never told him that he had an agreement with Mrs. Steinhauser for the place.

Jack Newell testified Mrs. Steinhauser purchased the property as an investment to receive rent after she quit work. He helped at her request. He helped clear the debris, helped fill cracks in the foundation, and helped reinforce the walls. The first roof was a makeshift roof, and he helped put on a second roof in the Summer of 1949. Mr. Thacker did not supervise or direct the work that was being performed, and no one ever mentioned that the Thackers had an agreement for the purchase of the property from Mrs. Steinhauser.

In rebuttal Mr. and Mrs. Thacker testified that Mr. Newell never did any work on the house. Mrs. Thacker said: "I say he wasn't even there"; and "All of them except my husband was loafing." Mr. Thacker stated Mr. Newell was not there until after they moved in. Each testified that Mr. Newell came out and visited, played cards and read comic books. Mrs. Thacker, upon an objection being sustained to her stated reason why they had not taken action, asked: "Shall I make up a reason?" Mrs. Abernathy and Mrs. McDaniel gave corroborating testimony with respect to Mr. Newell. On cross-examination Mrs. McDaniel said: "I wasn't there when anyone else was there"; "There was no one else [other than Mr. and Mrs. Thacker] working." We do not develop other matters bearing on thet credibility of these witnesses.

Mr. and Mrs. Steinhauser testified that between 10 p. m. and 12 p. m. Sunday, October 3, 1948, the Thackers came to their home for a cabinet and a stove, saying

they were moving because they had to be out in the morning. Mr. Steinhauser went to the lumber yard where he worked, got some screen cloth and put it over the windows at the place that night. Mrs. Thacker stated the building had no lights, water, doors, or windows; the floors were patches of concrete and dirt, and the walls were crumbled. She did not know that Mrs. Steinhauser had invited them to leave their apartment and move into the unfinished building.

The Thackers paid Mrs. Steinhauser $215 during the first twenty months of occupancy —the first, a payment of $25 November 6, 1948; the last, $10 May 29, 1950. There is no testimony that the Thackers informed Mrs. Steinhauser these payments were for the purchase of the property. Mrs. Steinhauser's receipts contained no notation of what the payments were for, but the receipt stubs, entered as she issued the receipts, showed the payments credited to "Rent." The Thackers did not ask for any notation on the receipts or direct Mrs. Steinhauser how to apply the payments. They stated they decided soon after May 29, 1950, to make no further payments until they knew what they owed or had something on paper. Mrs. Thacker, admitting that Mrs. Steinhauser could not well give the amount and name a day for payment while putting money into the property, testified that at the end of the first year she commenced asking Mrs. Steinhauser three or four times a month how much she had expended for materials; but that Mrs. Steinhauser always put her off. Mrs. Steinhauser was making payments in 1950.

Mr. Thacker testified that Mrs. Steinhauser sued for possession in 1950 and again in 1951. Mrs. Steinhauser testified the Thackers brought all the children to court for the trial of the 1950 suit, including the little girl she had kept for several years, and she dismissed the suit.

In January, 1951, Mrs. Steinhauser telephoned Mr. Thacker and told him she had to have some money and to start paying rent regularly or she would have to sell the place, asking him for $25 by February 1st. She testified he stated he could make the payment and asked what she wanted for the place. She told him $2,500. She stated this was the first conversation she had with the Thackers about selling to them, and the Thackers never accepted the offer. Mr. and Mrs. Thacker thought $2,500 was unreasonable and was more than Mrs. Steinhauser had invested in the property.

Mrs. Steinhauser testified that in connection with her suit for possession in 1951 Mr. Thacker wanted $1,000 for his labor, and they agreed she would pay him $400 after deducting for two years' rent, but this did not go through when Mr. Thacker raised his figure to $1,500. She dismissed the second suit; and thereafter did not press the Thackers for possession or payment of rent because of the family relationship.

Mrs. Steinhauser ceased purchasing materials for the property in 1951. She named expenditures totaling $1,823.60 and claimed a total of $2,500. The chancellor found she had expended $2,040, that plaintiffs had paid her $215, and that the unpaid balance was $1,825.

Mr. Thacker testified they had spent $341.92 for material used on the property, and that these expenditures were made after the 1950 suit for possession and after Mrs. Steinhauser asked $2,500 for the property in January, 1951, and they knew she was not recognizing the agreement they claimed she made to sell to them.

Neither Mr. nor Mrs. Thacker established that Mr. Steinhauser was a party to the pleaded agreement. The Thackers did not take it up with him until after Mrs. Steinhauser asked them $2,500 for the property.

Plaintiffs' counsel questioned Mrs. Steinhauser from a deposition taken in connection with her suit for possession in 1951.

We do not construe a portion of the deposition to the effect that she had made no arrangements about finances with the Thackers and had made a mistake in not having a tenancy arrangement with them as a recognition that the Thackers occupied the property as purchasers. She stated on redirect examination in the deposition she never thought about selling to Mr. Thacker; that they did not put a landlord and tenant relationship in words, and: "Q. In answer to Mr. Ahmann's question you said it was a tenancy relationship. You didn't consider him your tenant, did you? A. Well, yes, I really thought they would pay me something each month, yes. Q. Did you consider him a purchaser of the property? A. Oh, no."

The Courtneys and Steinhausers were neighbors. Mrs. Steinhauser told the Courtneys about this property and the circumstances—that the Thackers were living there and claimed an equity; that she owned it and had not received any rent for a long time; and that if they wanted to buy and evict the Thackers, she would sell. The Courtneys, after looking at the property, purchased it for $3,500, giving their note, secured by a deed of trust, and paying $150 on the purchase price. Mrs. Steinhauser executed and delivered a warranty deed to the Courtneys. Thereafter Mr. Courtney saw the Thackers, who claimed Mrs. Steinhauser did not own the property and could not sell it.

Mrs. Thacker stated the property is in an area where new houses are being built. Mrs. Steinhauser stated the area had built up with wonderful homes, and land in that locality is worth ten times its value in 1948.

Plaintiffs and defendants cite and quote the same passage from Jones v. Linder, Mo., 247 S.W.2d 817, 820 [5], which, speaking to the sufficiency of parol testimony for a decree of specific performance, states in part: "* * * and if by such parol evidence the complete, definite, fair contract to convey which has been pleaded is proved by clear, cogent, unequivocal, and convincing testimony, such party is entitled to specific performance of the oral agreement, or to damages for the breach thereof in instances where specific performance is not possible in whole or in part. This, if we understand the adjudicated cases, is a general statement of the conditions under which the doctrine of 'part performance' may entitle one to the enforcement of an oral contract to convey realty. [Citing authorities.]"

The decree should not stand. Under plaintiffs' evidence the vendor was entitled to the purchase money at the time of the vesting of title in the vendee. The instant record does not justify a decree vesting title in the vendee while giving the vendor only a lien upon the premises for the purchase price and staying execution thereon for thirty days. Courts of equity do not make contracts for the parties, nor enforce by specific performance a contract which is indefinite, uncertain, or incomplete in any of its essential terms. Webb v. Toms, 86 Mo. 591; Baldwin v. Corcoran, 320 Mo. 813, 7 S.W.2d 967, 968.

We are also of opinion plaintiffs failed to meet their burden of establishing the pleaded contract by clear, cogent, unequivocal and convincing testimony. Jones v. Linder and Baldwin v. Corcoran, supra. Plaintiffs did not establish that Mrs. Steinhauser "advised" them she would purchase the property. Neither knew anything of the purchase until after it was made. The Thackers did not discuss the purchase with Mr. Steinhauser in June or July, 1948, as pleaded, but, under their testimony, each discussed it only once with him, which was after they knew Mrs. Steinhauser did not recognize their claimed agreement to sell. Mr. Thacker wanted to pay over a period of time, no set amount, no set times. There is no testimony that this was ever agreed to. Mrs. Thacker did not so testify. Baldwin v. Corcoran, supra. Mr. Thacker displayed no interest in the taxes or in-

surance on the property. Under Mr. and Mrs. Thacker's testimony Mr. Thacker was to do the work. This he did not do. Mrs. Steinhauser and not Mr. or Mrs. Thacker procured the services of those who worked there with the exception of Mr. Thacker's brother. The lot has greatly increased in value since Mrs. Steinhauser purchased in 1948. There is no showing of record that the Thackers demanded performance of Mrs. Steinhauser and tendered performance on their part until 1955, which was after the value of the land had greatly increased. Suhre v. Busch, 343 Mo. 170, 191, 120 S.W.2d 47, 57; 81 C.J.S. Specific Performance § 110 c, p. 637. The Thackers occupied the property for over seven years, paying only $215, which was paid during the first twenty months. Mrs. Steinhauser's actions were consistent with her prior efforts to help her sister and her sister's children. The possession and actions of the Thackers are more readily referable to possession as tenants and the affection of one sister for another in assisting to provide a home for four children than to an agreement to purchase the property from Mrs. Steinhauser.

The decree is reversed and the cause is remanded with directions to modify said decree and dismiss count one of plaintiffs' petition, reinstate the counterclaim of defendant Courtneys against plaintiffs if they so desire, and otherwise proceed in conformity hereto.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

All concur.