Ivan L. NOBLE and Ben C. Ellis,
Respondents,

v.

Fred WEBER, Jr., Vigus Quarries, Inc., Albert Bailey, Wade Hilton and Floyd Barnes, Appellants.

No. 24669.

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1967.

Rehearing Denied Feb. 5, 1968.

Kay & Quigley, Eldon, for appellants; Michael J. Aubuchon, St. Louis, of counsel.

Hendren & Andrae, by John E. Burruss, Jr., Jefferson City, for respondents.

MAUGHMER, Commissioner.

The plaintiffs, Ivan L. Noble, Ben C. Ellis and their wives, had a judgment and decree for specific performance of an oral agreement allegedly made by defendant Fred Weber, Jr., and Vigus Quarries, Inc. The alleged oral agreement by defendant, Fred Weber, Jr. and by him as president of Vigus Quarries, Inc. was assumption of the debt and release of plaintiffs' liability on a $30,000 promissory note payable to Eldon Quarry Company, Inc., payment of which plaintiffs (and Willard M. Bledsoe, also an original plaintiff, and his wife) had guaranteed. The amount remaining due on the note was $20,922.41. Defendants were ruled not to have guaranteed the obligation insofar as Willard M. Bledsoe and Mrs. Bledsoe were concerned. Therefore, the amount involved herein is two-thirds of the total sum or $13,881.60. The defendants Weber and Vigus Quarries have appealed.

Under the suit as originally brought, other parties were participants and other types of relief were sought. Plaintiffs' petition was in five counts, one for specific performance, one in the alternative for rescission of the whole agreement, and the other counts for damages. The judgment was against the plaintiffs, Mr. and Mrs. Bledsoe, on all counts and neither has appealed. It was against the other plaintiffs on all counts except the one for specific performance, with no appeal by these plaintiffs. Other persons were named as defendants but were discharged in the trial court and again there was no appeal. Therefore, the judgment decreeing specific performance as to the $13,881.60 obligation by defendants, Fred Weber, Jr. and Vigus Quarries, Inc., and in favor of plaintiffs, Mr. and Mrs. Ivan L. Noble and Mr. and Mrs. Ben C. Ellis, is the only issue remaining in this controversy.

In early April, 1963, the plaintiffs, Noble, Ellis and Bledsoe, bought Benco Quarries, Inc., each paying $7,500 for a one-third interest therein. One-third of the stock was issued to each of these three purchasers and their wives. Shortly thereafter but still in April, 1963, Benco bought the Eldon Quarry Company, Inc. for the recited consideration of $50,000. Twenty Thousand dollars of the purchase price was paid in cash and the balance by a promissory note in the principal sum of $30,000, payable in semiannual installments of $2500, with interest at 5 percent. The Eldon Company had been owned by Mr. Ed Baur, who became in fact owner of the obligation. Mr. Baur was unwilling to accept the $30,000 note signed by Benco Quarries, Inc. alone, and so the individual owners of Benco, Mr. Noble, Mr. Ellis, Mr. Bledsoe and their wives, the plaintiffs, also signed the note as guarantors.

In late June or early July, the defendant, Fred Weber, Jr., as president and owner of defendant company Vigus Quarries, Inc., bought the stock of the plaintiffs, Mr. and Mrs. Noble and Mr. and Mrs. Ellis, in the Benco Company, and paid $8,800 cash for each one-third share. The plaintiff, Willard M. Bledsoe, and Mrs. Bledsoe, retained the one-third share which they owned in Benco, and Mr. Bledsoe functioned for a time as manager of that company. However, he and Mr. Weber did not agree as to how the company should be managed and operated and so in July, 1963, the Benco stock was sold to Mr. Bailey, Mr. Hilton and Mr. Barnes, who were originally named as defendants, but are no longer directly involved in this litigation.

The plaintiffs, Noble and Ellis, testified as to a meeting with Fred Weber, Jr. and the purchase of their two-thirds of the Benco stock by Vigus. With respect to the assumption of liability and release of plaintiffs from liability on the note, Mr. Ellis testified that Mr. Weber said: "We'll assume all liabilities and assets of this company and we will relieve you of the obligation of this note and that Mr. Bailey will be operating the plant", and further, "Mr.

Noble and Mr. Bailey will get together on Monday and have an agreement drawn up". Mr. Noble said that Weber agreed that Vigus and he personally would assume the debt and relieve plaintiffs from liability thereon.

A written instrument (plaintiffs' Exhibit 3) embodying this asserted oral agreement, was prepared by defendant Weber's attorney, Mr. Quigley. The plaintiff, Mr. Noble, said its provisions were dictated to the attorney by Mr. Al Bailey, one of the originally named defendants. This proposed written agreement was offered in evidence by plaintiffs and it was received. It named Ivan L. Noble and Ben C. Ellis, as first parties, Vigus Quarries, Inc. as second party, and Eldon Quarry Company as third party. It recited that first parties who owned a majority of the stock interest in Benco Quarries, Inc. had sold and assigned their interest therein to second party (Vigus). The agreement declared that first parties and their wives were guarantors on the $30,000 promissory note and that second party (Vigus) agreed to assume the liability thereon of first parties and their wives. The agreement further provided that the third party (Eldon Quarry), in consideration of the assumption of liability by second party, released first parties and their wives from liability on the note. This agreement clearly recites (1) Noble and Ellis sold their stock to Vigus; (2) Vigus agreed to assume the Noble and Ellis liability on the promissory note and (3) Eldon Quarry released Noble and Ellis from further liability. Mr. Fred Weber, Jr., is not even mentioned therein. Although this proposed agreement was prepared by defendant's attorney, it was signed by the plaintiffs Noble and Ellis and was by them offered in evidence. Since they did sign it, it is difficult to see how they can now contend that Mr. Weber, in addition to Vigus, agreed to assume liability when the matter was discussed orally. In fact, counsel for the plaintiffs, in oral argument before this court, conceded that Weber is not liable. This proposed agreement was not signed by Vigus or by Eldon Quarry, payee in the note, or by Weber.

Mr. Weber testified that he recognized that when Vigus bought Benco it became liable on the $30,000 note. He said the reason he refused to sign the agreement (for Vigus) was because plaintiffs failed or were slow in delivering the corporate records. Mr. Ed Baur, holder of the $30,000 obligation, said the agreement was not presented to him for signature, that he would not have signed with only Vigus as security, but he would have signed releasing plaintiffs from liability if Fred Weber, Jr. had guaranteed payment. In their brief plaintiffs say the testimony of Mr. Baur shows he would have accepted the guarantee if Vigus had signed the agreement and therefore defendants' contention that the contract could not be specifically enforced is not tenable. We do not so read Mr. Baur's testimony.

The deposition of Albert Bailey, one of the present owners of Benco, was taken by plaintiffs and by them presented in evidence. He said he was present when Weber, on behalf of Vigus, bought the stock owned by Noble and Ellis in the Benco corporation. He said the agreement (plaintiffs' Exhibit 3) was prepared by attorney Quigley and that he and Mr. Noble were present. He said the wording in the agreement were the "words of Ivan Noble and Bob Quigley". He believed Mr. Weber refused to sign for Vigus because there was an imbalance between the actual receivables and these items as orally represented. He said that "we", meaning himself and the other present owners of Benco, had made two $2500 payments on the Eldon note as they came due and that he considered the whole note as a primary obligation of Benco.

On appeal all contestants agree that the decree and judgment for specific performance is against both Vigus and Fred Weber, Jr. We quote in part from the decree:

"The Court finds further that the Defendant, Fred Weber, Jr., acting as president and on behalf of Defendant, Vigus Quarries, Inc., did on July 13th, 1963, purchase all of the stock owned by Plain-

tiffs Ivan L. Noble and Ben C. Ellis in Benco Quarries, Inc., at which time the stock certificates were transferred to the purchasers.

"The Court finds further that at the time of the purchase by Weber and Vigus Quarries of the stock of plaintiffs Noble and Ellis, Defendant Fred Weber, Jr., acting as president and on behalf of Vigus Quarries, Inc., entered into an oral contract with Plaintiffs Ivan L. Noble and Ben C. Ellis as a part of said purchase of stock from said Plaintiffs, whereby said Defendant Weber, acting as president and on behalf of Vigus Quarries, agreed to assume the liability of Plaintiffs Ivan L. Noble and Ben C. Ellis and their wives as Guarantors on said promissory note for $30,000.00 to Eldon Quarry Company, and agreed that said Plaintiffs and their wives would be released from any and all obligations arising out of the note.

\* \* \* \* \* \*

"WHEREFORE, the Court finds the issues for Plaintiffs Ivan L. Noble and Ben C. Ellis on Count I of their Petition and decrees specific performance of the oral agreement of Defendant Weber and Vigus Quarries to assume the guarantee of payment of the promissory note in the sum of $30,000 made payable to Eldon Quarry Company and executed by said Plaintiffs and their wives as Guarantors for Benco Quarries, Inc., and to release said Plaintiffs and their wives from any obligation arising out of the note."

The judgment against Weber is certainly not in accordance with the court's finding in the decree that Weber's oral agreement to assume the Eldon obligation, was in his capacity of and acting as president of Vigus, rather than individually. In the oral argument before this court plaintiffs conceded that the judgment against Weber cannot stand. The judgment as to Weber will be reversed outright by this court.

 On appeal defendants say the contract on which recovery was received

was not the contract pleaded, that the alleged oral agreement was not proved by "clear, cogent and convincing evidence", that it was error to receive plaintiffs' Exhibit 3 in evidence and that Eldon Quarry Company, one of the parties to the alleged contract, was not a party defendant, was not subject to the court's jurisdiction or subject to its decree. We believe that the only difference between the agreement pleaded and the one proved concerned the individual liability of the defendant Fred Weber, Jr. This divergence is not enough to preclude relief. It is our opinion that the evidence adduced on the material issues meets the requirement of being "clear, cogent and convincing". In fact, all parties are in accord that Vigus agreed to assume liability for payment of the Eldon Quarry note. Thacker v. Courtney et al., Mo.Sup., 304 S. W.2d 1; Bennington et al. v. McClintick et al., Mo.Sup., 253 S.W.2d 132; 26 Mo.Dig., Specific Performance, Vigus not only agreed to do so, but the law cast the burden upon it.

As to plaintiffs' Exhibit 3, which was prepared by defendants' attorney, it was admissible as corroboration of the terms of the alleged oral agreement. Moreover, defendants cannot be prejudiced since the assumption of liability therein provided for was squarely admitted by defendant Weber, president of Vigus. Since neither Eldon Quarry Company nor Mr. Baur, holder of the note, is even alleged to have, orally or otherwise, agreed to release plaintiffs from liability as guarantors, we cannot see that under the issues presented, either Eldon or Mr. Baur was a required party defendant.

On appeal defendants also say plaintiffs' judgment cannot stand, at least as to specific performance releasing plaintiffs from further liability, because the contract asserted was a three way contract and required approval of the release by Mr. Baur or by Eldon Quarry; that no other person—only Baur or Eldon could give such a release—and therefore release of plaintiffs from further liability is impossible of performance by defendants.

It is apparent, we believe, that plaintiffs could be released from liability only by or at least with the approval of the holder of the guaranteed obligation. There is no contention that Baur or Eldon either granted or approved such release. Defendants say the failure of this portion of the alleged contract voided the whole. We do not think so. We believe the contract is severable and that part under which Vigus assumed liability should be permitted to stand. We quote from the opinion of the Supreme Court en banc in Swinney et al. v. Continental Bldg. Co., 340 Mo. 611, 102 S.W.2d 111, 120, 121:

> "As in any construction of written instruments, 'it is very difficult to lay down a rule which will apply to all cases and consequently each case must depend very largely on the terms of the contract involved' (13 C.J. 561, § 525); and the question is primarily one of intention which 'is to be determined from the language which the parties have used and the subject matter of the agreement.' 13 C.J. 562, § 526. Tests which are used for aid in determination of this question, although no one of them is alone sufficient to decide the question, are whether the subject-matter of the contract is divisible, whether the consideration is entire or apportioned, whether the obligation is due at the same time to the same person, and whether the contract is to take the whole or none. 13 C.J. 563, §§ 527, 528; 6 R.C. L. 858, § 246. Williston, Contracts, 1652, § 863, says that the essential test 'can be nothing else than the answer to an inquiry whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever if any promise or set of promises were struck out.'"

Of course at the time of the sale of their stock plaintiffs wanted two things: First, they wanted Vigus, the purchaser of Benco, to assume the obligation. It seems this objective came into being, as Mr. Weber said, when Vigus bought Benco. Vigus bought the corporate stock and this included not only the assets, but also the liabilities. Mr. Weber also orally agreed for Vigus to assume the debt. Second, plaintiffs wished to be relieved from their personal liability which arose when they personally signed the note. Such a release was not within the power of Vigus or Weber personally to give. It was dependent upon whether or not Mr. Baur, holder of the note, would release plaintiffs.

We believe the evidence and the law authorized and justified a judgment and decree that Vigus was liable for and assumed payment of the $30,000 promissory note. We do not believe that part of the decree requiring Vigus and Weber, either or both, to release plaintiffs from any obligation arising out of the note is either justified, authorized or possible of execution by defendants. Such a release would require the consent and approval of Mr. Baur, holder of the note.

Therefore, the judgment as to Fred Weber, Jr. is reversed outright in all respects. The judgment as to Vigus is affirmed insofar as liability is concerned, but reversed insofar as it purports to require Vigus to release plaintiffs from any obligation arising out of the note.

The judgment and decree herein is reversed in part and affirmed in part and the cause is remanded with directions to enter a judgment and decree in accordance with this opinion.

SPERRY, C., concurs.

PER CURIAM:

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the Court.

HOWARD, P. J., and CROSS, J., concur.

MORGAN, J., not participating because not a member of the Court when the cause was submitted.