Mary C. FOLEY, Respondent,

v.

Dwain Edwin HUDSON, Appellant.

No. 53186.

Supreme Court of Missouri,
Division No. 2.

Sept. 9, 1968.

Motion for Rehearing or for Transfer to
Court En Banc Denied Oct. 14, 1968.

Max W. Foust and Duke W. Ponick, Jr., of Foust, Moudy & Jacobson, Kansas City, for respondent.

Amos Wight, Nevada, William H. Sanders, Dean F. Arnold, David C. Trowbridge, Kansas City, for appellant; Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, of counsel.

FINCH, Presiding Judge.

Plaintiff brought action for wrongful death of her husband and recovered a verdict for $25,000. Defendant appeals. We affirm.

◼ Defendant's primary contention on appeal is that his motion for a directed verdict should have been sustained. Accordingly, it is necessary for us to review the evidence, which we consider from the standpoint most favorable to plaintiff.

Defendant, on the night of March 4, 1964, was driving his straight truck with tandem "pup" trailer north on U.S. Highway 71. It was a nasty, snowy night and freezing was occurring. The highway was covered with slush and in the vicinity of the accident was icy.

Defendant approached a hill on which there were several slow-moving trucks ahead of him. He attempted to stop but when he applied his brakes his truck and trailer jackknifed. The trailer broke loose and went into the east ditch with one end extending out on the highway. His truck spun around and came to a stop headed south but still in the northbound lane.

Defendant sent his helper to the back of the truck to turn off valves which had supplied air to the trailer brakes. When the helper got back in the truck defendant then drove from the northbound lane to the southbound lane (west half) and then headed south. He testified that there was a dangerous situation and he wanted to get out of there. When defendant started to pull across to the west half of the highway he saw lights of a truck approaching from the north in the southbound lane. He estimated that these lights (which were on a truck driven by Dan Short) were 50 to 75 feet away.

At that time there were three tractor-trailer units headed south on Highway 71. The first was driven by Dan Short, the second by Dale Miller, and the third by the deceased Foley. Each was approximately 48 feet long and weighed about 58,000 pounds with its load. They had been traveling about 40 miles per hour as they approached the hill on which this collision occurred. Miller was traveling 200 feet or so back of Short, and Foley was probably 400 feet back of Miller.

As these tractor-trailers approached from the north, they went up a gradual hill to its crest and then started downhill on the slope where defendant's truck had turned around and had stopped, headed south, in the northbound lane.

When Short reached the crest of the hill he was traveling about 20 miles per hour. He first observed the headlights of a car facing north which he placed on the east shoulder. Those headlights bothered him and at first he did not see anything else ahead of him.

When Short got even with this car, he saw a dark object on the highway ahead but could not tell what it was. It was in his southbound lane and was then 75 or so feet away. Short applied his brakes and started skidding. The dark object had no lights until he got within 20 to 30 feet. When its lights came on it took off to the south and Short saw that it was a straight

truck. Short slowed his tractor-trailer unit down to 5 to 10 miles per hour and he came within 5 feet of the straight truck but did not hit it because the straight truck meanwhile had started moving. Short then put his truck in gear and kept moving because Dale Miller, in the second truck, was close behind him.

When Dale Miller reached the top of the hill, he also observed the headlights of the parked car on the east side of the highway which had been noticed by Short. Miller saw Short's brake lights come on just as he crested the hill. Short was then a little south of the car parked on the east side of the highway.

Miller applied his brakes when he saw Short's brake lights come on and got his truck stopped about a foot from Short's tractor-trailer unit. Miller testified that Short meanwhile had started accelerating and this was the reason that the two units had not collided.

Various distances from the crest of the hill were mentioned by witnesses when asked as to the point where Miller stopped his truck and where it subsequently was hit by the Foley truck, but Miller himself testified that he was 100 to perhaps 150 feet over the crest of the hill when he came to a stop. He did not get his truck started again, and seconds later (at one point Miller estimated the time as perhaps a second or two) the Miller truck was hit in the rear by the Foley truck. The impact was hard and Foley was killed in the accident.

The plaintiff's case was submitted to the jury on the negligence issues of whether defendant drove his truck onto the west half of the highway directly into the path of oncoming traffic, whether defendant failed to have the lights of his truck lighted and whether as a direct result Foley was killed.

Defendant advances two grounds for his contention that his motion for a directed verdict should have been sustained. First, he says that any act of his either of driving onto the west half of the highway into the path of oncoming traffic or of failing to have the lights of his truck lighted was not an efficient or proximate cause of the collision between the second tractor-trailer unit driven by Miller and the third unit driven by Foley. Second, he says that Foley was contributorily negligent as a matter of law in failing to stop before permitting his tractor-trailer to strike the Miller unit. Defendant's position is summarized in the following quotation from his brief:

"In our case, after Hudson drove into the southbound lane, other causes intervened to produce the collision between the second and third tractor trailers. The lead tractor trailer, while it may have slowed somewhat abruptly, continued moving south. But the second tractor trailer came to a full stop. And thereafter plaintiff's deceased failed to control his tractor trailer. It was the act of the second tractor trailer in stopping, combined with the act of plaintiff's deceased in failing to also stop, that were the efficient causes of only collision shown in evidence. In short, those causes intervened. Such intervening acts insulate Hudson from legal liability."

We consider these contentions together.

■ "Generally, it is sufficient to constitute proximate cause that the negligence charged was the efficient cause which set in motion the chain of circumstances leading up to the injury. The test is not whether a reasonably prudent person would have foreseen the particular injury but whether, after the occurrences, the injury appears to be the reasonable and probable consequences of the act or omission of the defendant." Floyd v. St. Louis Public Service Co., Mo., 280 S.W.2d 74, 78. See also Thebeau v. Thebeau, Mo., 324 S.W.2d 674, 678.[1]

1. For those who are interested, there are excellent discussions of numerous cases dealing with the question of causal connection and proximate cause in the cases of Leek v. Dillard, Mo.App., 304 S.W.2d 60, 65 [10, 11, 12 and 13], and Phillips v. Stockman, Mo.App., 351 S.W.2d 464, 472 [11, 12, 13 and 14].

We have concluded that defendant Hudson's negligence in driving "his truck onto the west half of the highway directly into the path of oncoming traffic" started a chain of events which culminated in and were not completed until the collision between the Miller and Foley trucks. The efforts of Short and Miller to stop their trucks were the direct result of the actions of the defendant. Hudson may not have anticipated that the occurrences would happen exactly as they did, but that is not necessary. It is sufficient that what occurred is a natural or probable consequence of his act in driving onto the west side of the highway at a time when there were approaching tractor-trailer units coming downhill on a slick pavement at night, and that some injury was reasonably foreseeable. Leek v. Dillard, supra, 304 S.W.2d 1. c. 65.

The same is true with respect to the failure of defendant Hudson to have the lights on his truck lighted. The evidence most favorable to plaintiff is that Hudson did not turn on his lights until the tractor-trailer unit driven by Short was within 20 or 30 feet of him. It is true that Short had seen the truck as a dark object earlier than that at a time when he estimated that the dark object was 75 or so feet away. Defendant argues that the statutory requirement for lights on a vehicle is only to warn of the presence of the vehicle. He asserts that their absence cannot have been the proximate cause of the accident when the evidence was that Short had seen the truck without lights in time to avoid actual collision between the Short tractor-trailer unit and the Hudson unit. This argument, however, overlooks the fact that Short, his vision somewhat obscured by the lights of a parked car, had traveled from the crest of the hill to a point opposite the parked vehicle before he saw the unlighted Hudson truck and applied his brakes. If the lights on the Hudson truck had been burning, Short might have seen his truck from the crest of the hill and applied his brakes sooner, giving earlier warning to Dale Miller and possibly to Foley, who was approaching the hill from the north. Earlier notice to Miller could have permitted him to slacken his speed without stopping. Thus, the jury could have found that absence of Hudson's lights contributed to cause the collision between the Miller and Foley trucks.

In Leek v. Dillard, supra, a vehicle without lights was stopped on a bridge. Judge Stone pointed out, 304 S.W.2d 1. c. 66, that if the vehicle had displayed a light visible to the other defendant, the jury might have found that as a result of such light "defendant Redman would have been enabled to have discovered *sooner* not only the presence and position of the Dillard automobile but also the fact that it was not moving, and that thereby Redman's *emergency* application of his brakes, which threw plaintiff from her seat, might have been avoided." The Court of Appeals in that case held that whether the negligence of the defendant Dillard in not having his vehicle lighted was a proximate cause of plaintiff's injury was for the jury, and that his motion for a directed verdict should not have been sustained. The court's reasoning there is applicable to the issue of absence of lights on the Hudson truck.

Defendant argues that, "at most, any act or omission of Hudson was merely a condition, not an efficient cause." He cites King v. Ellis, Mo., 359 S.W.2d 685, saying that Hudson's position was similar to that of the defendant in King v. Ellis.

In the King case, three vehicles were traveling in the same direction. Suddenly, the first vehicle, driven by defendant, made an unsignalled U-turn. This maneuver caused the second vehicle, driven by plaintiff, to stop suddenly. The brakes on the third car failed and it ran into the rear end of the middle vehicle occupied by plaintiff. Plaintiff made a settlement with the driver of car No. 3 and then sued the driver of the first car. Defendant claimed that the failure of the brakes on the third car was an intervening cause and that he had no

liability. The court, l. c. 688, defined an intervening cause in this language: "Generally, an efficient, intervening cause is a new and independent force which so interrupts the chain of events that it becomes the responsible, direct, proximate, and immediate cause of the injury but it may not consist merely of an act of concurring or contributing negligence."

Witness Rayburn in the King case testified that if the brake line on his car had not broken he would have been able to stop and avoid colliding with plaintiff's vehicle. This fact is recognized in the opinion, l. c. 689, as follows: "Without the sudden and unexpected failure of the brakes on the Rayburn car in the present case, the collision would not have occurred. On the record before us the brake failure was an efficient, intervening cause and the proximate cause of the plaintiff's injuries."

The factual situation with which we are confronted is not comparable to that in King v. Ellis. There is no intervening cause similar to the admitted brake failure in that case. The stopping of the second tractor-trailer unit was directly attributable to defendant's actions and the resulting conduct of Dan Short in trying to avoid collision with defendant's truck. It did not interrupt the chain of events flowing from the actions of defendant. It was not an independent, intervening cause.

■ Defendant also asserts that deceased Foley was guilty of contributory negligence as a matter of law, but we overrule that contention. The evidence most favorable to plaintiff does not compel the conclusion that Foley could have stopped his truck and avoided the collision. Such evidence placed the stopped Miller truck 100 feet or so south of the crest of the hill. Evidence of a later test by Miller and Short, using their tractor-trailer units, disclosed that when Short was following Miller at a distance of 300 to 400 feet as they approached the hill from the north, the Miller truck, after it passed the crest of the hill, went completely out of Short's sight until he got right at the top of the hill. The evidence established that the highway was slushy and was icy in spots. Lights on a parked car on the east side of the road had interfered with the vision of Short and Miller as they reached the crest of the hill, and by inference would have affected Foley's vision. There was no evidence as to the speed of the Foley truck when it reached the crest of the hill or as to braking distances at any speed on that kind of surface. We conclude that upon the evidence in this case and all favorable inferences deducible therefrom, when viewed in the light most beneficial to plaintiff, reasonable minds could fairly differ as to whether Foley could and should have stopped without colliding with the Miller truck. Walker v. Massey, Mo.App., 417 S.W.2d 14, 25.

■ Furthermore, "where there is no direct evidence of conduct which would indicate negligence, a person in case of death is presumed to have exercised due care." Lyon v. Southard, Mo., 323 S.W.2d 785, 788. See also Keeney v. Callow, Mo., 349 S.W.2d 75. There is no such evidence here.

We hold that Foley was not guilty of contributory negligence as a matter of law.

Defendant has cited various other cases which we have considered. We find nothing in them which would cause us to change the conclusion we have reached.

Defendant complains of the giving of Instruction No. 2, but he merely refers in his brief to the authorities and argument in support of his contention that his motion for a directed verdict should have been sustained. He makes no complaint as to the form of the instruction. What we have said heretofore disposes of this contention.

The judgment is affirmed.

All of the Judges concur.